## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ameriprise Captive Insurance Company, as subrogee of IDS Property Casualty Insurance Company,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>Audatex North America, Inc.,<br><br>　　　　Defendant | Civil Action No. _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Ameriprise Captive Insurance Company ("ACIC"), for its Complaint against Defendant Audatex North America, Inc. ("Audatex"), alleges as follows:

### Background

1.　This is a breach of contract action caused by Audatex's refusal to indemnify and reimburse IDS Property Casualty Insurance Company ("IDS") for money it and its insurer, ACIC, paid to defend and settle a class action lawsuit. That lawsuit alleged that vehicle damage calculations made by software Audatex provided to IDS violated the law.

2.　The contract obligated Audatex to defend, indemnify, and hold IDS harmless for any lawsuit resulting from or arising out of Audatex's systems or services.

3.　ACIC and IDS were required to spend over two million dollars to defend and settle claims that Audatex's software and systems unfairly and unlawfully calculated vehicle damage totals in violation of Washington state law.

4.      Audatex has refused to honor its contract and refuses to reimburse the money ACIC and IDS spent defending and settling claims that resulted from and arose out of IDS's use of Audatex's system, services, and content.

5.      All conditions precedent have been met and this dispute is ripe for adjudication.

**Parties, Jurisdiction, and Venue**

6.      ACIC is a Vermont company with its principal place of business in Minnesota.

7.      At all relevant times, IDS was an insurance company organized and existing under the laws of the State of Wisconsin, with its principal place of business located in De Pere, Wisconsin.

8.      Audatex is a Delaware corporation, with its principal place of business at 15030 Avenue of Science, Suite 100, San Diego, California.

9.      This Court has original jurisdiction of this civil action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.      Venue is proper in this district because the parties agreed to resolve any claim or action brought by one of the parties in the appropriate federal or state court located in New York County, New York, and the parties irrevocably and unconditionally consented to the exclusive jurisdiction and venue (and waived any claims of *forum non conveniens* and any objections as to laying of venue) of such courts.

**Background**

11.     IDS was an insurance company in the business of issuing personal lines of property and casualty insurance.

12.     IDS is now known as American Family CONNECT Property & Casualty Insurance Company ("CONNECT"). CONNECT is a Wisconsin corporation and maintains its principal place of business in Wisconsin.

13.     Audatex is an application service provider, which provided services and software to insurance companies like IDS.

14.     Audatex advertises itself as "the leader in intelligent data and automation for the most forward-thinking claims, estimating and collision repair solutions."

15.     In October 2011, Audatex and IDS entered into an Application Service Provider Agreement ("Agreement").

16.     Under the Agreement, Audatex was required to deliver services to IDS through either the Internet or secure extranet as defined in the Agreement. IDS, from time-to-time during the term of the Agreement, would request that Audatex perform certain services in accordance with the terms of the Agreement and pursuant to an implementing document for such services (referred to as a "Statement of Work"). Each fully executed Statement of Work was subject to the terms of the Agreement.

17.     Commencing on the effective date of the Agreement, Audatex was required to provide IDS the services (including the Hosting Services and the Support and/or Maintenance Services), functions and responsibilities described in the applicable Statement

of Work and all attachments thereto, as they may evolve, be supplemented, enhanced, modified or replaced in accordance with the Agreement.

18.     Pursuant to the Agreement, Audatex agreed to provide certain services to IDS. One of the services Audatex provided under the Agreement was its AudaExplore system.

19.     Audatex also provided IDS its Autosource valuation tool. When an insured had a claim for a total loss of their vehicle, IDS would utilize the Autosource valuation tool to determine a value for the vehicle.

20.     The AudaExplore system would provide a total cash value for vehicles that was reduced by a "Typical Negotiation Adjustment." This negotiation adjustment would reduce the total cash value of a vehicle on the assumption that buyers are able to negotiate a lower price for a vehicle than the price advertised by a dealer.

21.     Audatex's Autosource valuation or AudaExplore software would provide a valuation for the vehicle but applied a typical negotiation adjustment (TNA) of approximately 6-7%.

22.     In November 2019, IDS was served with a class action complaint in the Superior Court of the State of Washington in Pierce County. IDS removed the matter to the United States District Court for the Western District of Washington. *See Zuern v. IDS Property Casualty Ins. Co.*, No. 3:19-cv-6235 (W.D. Wash.) ("*Zuern*"). (Notice of Removal, Summons, and Complaint attached as **Exhibit A**).

23.     The *Zuern* Complaint also alleged that IDS marketed, sold, and provided insurance contracts through its affiliate companies Ameriprise Ins. and Ameriprise Home & Auto Insurance.

24.     The *Zuern* Complaint alleged that IDS's insurance contracts required it to provide coverage for the total loss of a vehicle in a collision based on the actual cash value of the vehicle or the amount necessary to repair or replace the property.

25.     The *Zuern* plaintiffs further alleged that IDS obtained market reports from AudaExplore to determine a valuation for vehicles based upon comparable vehicles recently sold or for sale in the geographic area of the insured, and IDS offered its insureds a claim amount equivalent to the valuation of the loss vehicle specified in the market valuation report prepared by AudaExplore.

26.     The *Zuern* Complaint alleged that market valuation reports prepared by AudaExplore reduced the estimated value to comparable vehicles by applying a TNA, which those Plaintiffs alleged is not permitted under the insureds' contracts or Washington law. The Plaintiffs alleged that the use of the Audatex system and software resulted in damage to insureds because their total loss claims were calculated by applying unpermitted TNAs.

27.     The *Zuern* complaint sought to certify a class defined as:

> All persons insured by a contract of automobile insurance by Ameriprise to a Washington resident, and who, from the earliest allowable time through the date of resolution of this action, received compensation for the total loss of their vehicles under their First Party Coverages (Comprehensive, Collision, and UIM) and received a total loss valuation from Ameriprise based upon an AudaExplore valuation.

28.     IDS entered into a Settlement Agreement with the *Zuern* plaintiffs in or around December 11, 2020 ("Settlement"). The Settlement provided for the creation of a settlement fund of $1,750,000, which would be distributed to class members and any residual funds to be disbursed to the Legal Foundation of Washington as a *cy pres* recipient.

29.     In their motion for preliminary approval of the Settlement, the plaintiffs alleged that IDS departed from the use of "actual cash value" in paying total loss claims by basing the valuations and claims payments on the values of comparable vehicles that had been artificially reduced by applying a TNA. "Plaintiffs aver[ed] that IDS employed a routine total loss settlement process that involved obtaining a market valuation report from Audatex North America, Inc."

30.     The plaintiffs in *Zuern* further noted that "[t]hese market valuation reports reduced the estimated value to comparable vehicles by applying improper adjustments, such as the Typical Negotiation Adjustment."

31.     The *Zuern* settlement class was defined as:

> All persons insured by a contract of automobile insurance issued by IDS to a Washington resident, and who, from October 25, 2013 through the date of the order granting preliminary approval, received compensation for the total loss of their vehicles under their First Party Coverages (Comprehensive, Collision, and UIM) and received a total loss valuation from IDS based upon an Audatex valuation.

32.     The *Zuern* Settlement included a release of all claims relating to or arising out of "the valuation, adjudication, or claims handling of any automobile total loss claim adjudicated using any valuation report prepared or provided by Audatex North America, Inc."

33.     The *Zuern* Settlement also included Audatex North America, Inc. as a "Released Party."

34.     The Court granted preliminary approval of the Settlement on February 25, 2021. Plaintiffs moved for final approval of the *Zuern* Settlement on April 21, 2021. The Court granted Final Approval of the Settlement and entered Judgment on May 26, 2021.

35.     IDS and its insurer, ACIC, paid approximately $2,500,000 to defend and resolve the *Zuern* lawsuits. Those costs included the settlement amount, defense fees and expenses, and various settlement and litigation costs.

36.     The allegations of the *Zuern* action were not unique. Numerous insurance companies and Audatex have been sued as a result of, or arising from, their use of Audatex's system and services. *See, e.g., Bilhimer v. State Farm Mutual Automobile Ins. Co., Audatex North America, Inc. et al.*, Civ. No. 2:19-2248 (D. Kan.); *Clippinger v. State Farm Mutual Automobile Ins. Co., Audatex North America, Inc. et al.*, Civ. No. 2:20-cv-02482 (W.D. Tenn.); *Kelley v. State Farm*, Case No. 2:20-cv-00454 MJP (W.D. Wa. 2020); *Jama v. State Farm*, Case No. C20-652 MJP (W.D. Wa. 2020); *Ursin v. Liberty Personal Ins. Co.*, Case No. 3:21-cv-00286-SDD-RLB (M.D. La. 2021); *Boncic v. Permanent General Assur. Co.*, Case No. 5:19-cv-00023-SLP, Dkt. No. 29 (W.D. Ok. 2019) *Bryant v. State Farm Mutual Automobile Ins. Co., Audatex North America, Inc. et al.*, Civ. No. 3:20-cv-04669 (N.D. Cal.); *Shields v. State Farm Mutual Automobile Ins. Co.*, Civ. No. 6:19-cv-01359 (W.D. La.); *Faysal v. State Farm Fire & Cas. Ins. Co.*, Civ. No. 20-cv-00652 (W.D. Wa.); *Slaughter v. Columbia Mut. Ins. Co.*, Civ. No. 1:19-cv-1023 (W.D. Ark.)

37.     Other Audatex customers facing allegations like those made in *Zuern* entered class action settlements and the terms of those settlements confirm that they arose or resulted from the use of Audatex's system. *See, e.g., Tereshchenko v. American Family Mutual Insurance Co*., Case No. 19-2-07123-6 (Pierce Co. Sup. Ct., WA 2019) (class action settlement notice states: "In the lawsuit, Plaintiff claims that, in settling claims using valuation reports prepared using Audatex's Autosource system, AMFAM improperly took deductions for "typical negotiation" when calculating the actual cash value of a vehicle declared a total loss. Plaintiff alleges that these deductions were not factually supported, nor reasonable, nor allowed by Washington Administrative Code § 284-30-391 or the AMFAM insurance contact."); *Stier v. PEMCO Mutual Insurance Co*., Case No. 18-2-08153-5 (Pierce Co. Sup. Ct., WA 2018) (class action settlement notice states: "In the lawsuit, Plaintiff claims that in settling total losses using Autosource estimates, PEMCO improperly took deductions for "typical negotiation" that were not factually supported, reasonable, or allowed by Washington Administrative Code § 284-30-391.")

38.     Under the Section 20.1 of the Agreement between Audatex and IDS, Audatex is contractually obligated to defend and indemnify IDS from all claims resulting from or arising out of any work product provided by Audatex.

39.     Specially, Section 20.1 of the Agreement provides:

> **20.1     Vendor Indemnity.**  Notwithstanding any other provision herein, [Audatex] agrees to defend, at its own expense, any claim, suit or action or proceeding brought against Ameriprise or its Affiliates, and each of their respective directors, officers, employees and agents (collectively,  **"Indemnitees"**) and shall indemnify and hold Indemnitees harmless from and against any and all claims, judgments, awards, demands, liabilities, losses, costs, damages or expenses

8

(including reasonable attorneys' fees and costs of settlement) (collectively, **"claims"**), resulting from or arising out of:

**20.1.1** the System, Services, Content (specifically excluding Ameriprise Content), or any work product provided by [Audatex] hereunder, or the use thereof, and/or

**20.1.2** any third party claims arising out of [Audatex's] representations, warranties, covenants, or other obligations under Sections 10.3 (**"Information and Physical Security"**). 12.1 ("Legal Compliance"), 12.3 (**"Policy Compliance"**), and/or Articles 15 (**"Encryption Export"**) or 18 (**"Representations, Warranties and Covenants"**).

40.    Section 18.1.7 of the Agreement also provides that Audatex "represents, warrants and covenants that [Audatex] (and the Services, including the System) shall comply with all applicable federal, state, local and foreign rules, laws and regulations, in the performance of its obligations hereunder."

41.    Upon receiving notice of the *Zuern* litigation, IDS notified Audatex and demanded that Audatex defend against the claims and indemnify IDS for any loss. Notwithstanding its contractual obligations under Section 20.1 of the Agreement, Audatex declined to defend IDS against the claims in *Zuern*.

42.    In April 2020, IDS and Audatex entered into a tolling agreement.

43.    Upon the entry of final judgment in the *Zuern* litigation, IDS demanded that Audatex indemnify it for all costs, including attorney's fees, expenses, and settlement funds paid to resolve the allegations. Once again, notwithstanding its obligations under Section 20.1 of the Agreement, Audatex refused to indemnify IDS.

44.    The Agreement required Audatex to carry certain insurance as described in Section 24 and Schedule 8.0.

45.     In connection with the *Zuern* lawsuit, Audatex was asked to provide the contact information for the insurance carrier that issued the required coverage.

46.     Audatex did not respond to those requests and has not provided IDS or ACIC's representatives with proof that it secured the insurance coverage it was obligated to obtain under the Agreement.

47.      Through a policy of insurance issued by ACIC under which IDS was afforded coverage, ACIC is subrogated to the rights of IDS and is entitled to pursue IDS's claim for Audatex's breach of the indemnification obligations of the Agreement.

**Count I – Breach of Contract**

48.     IDS hereby incorporates by reference the allegations in paragraphs 1-47 as though fully stated.

49.     IDS and Audatex entered a valid and binding contract under which Audatex agreed to provide services to IDS.

50.     IDS performed all conditions precedent and obligations under the Agreement.

51.     Despite the unambiguous language in the Agreement between IDS and Audatex broadly requiring Audatex to defend and indemnify IDS for any claims arising out of or related to IDS's use of Audatex's system or services, Audatex refused to defend against the claims. IDS thus defended itself and ultimately settled the *Zuern* lawsuit, incurring over two million dollars in damages.

52.     Audatex has refused to fulfill its contractual obligation to indemnify IDS for the losses IDS incurred relating to its use of Audatex's system and services. Accordingly, ACIC brings this suit seeking enforcement of the Agreement.

53.     Audatex breached its contractual obligation to defend and indemnify IDS for any claim "resulting from or arising out of the System, Services, Content (specifically excluding Ameriprise content), or any work product provided by [Audatext]" or any third-party claims arising out of Audatex's representations, warranties, or covenants.

54.     Upon information and belief, Audatex failed to obtain the insurance coverage required by the Agreement and, as a result, breached the Agreement.

55.     IDS was damaged by Audatex's breach of the parties' Agreement.

56.     ACIC and IDS paid to defend and settle the *Zuern* lawsuit, which resulted and arose from IDS's use of Audatex's system, services, and contract.

57.     As a direct result of Audatex's breach of the Agreement, ACIC is entitled to damages in an amount of at least $2,500,000, with the specific amount to be determined at trial.

### Prayer for Relief

**WHEREFORE**, Plaintiff Ameriprise Captive Insurance Company, as subrogee of IDS Property & Casualty Company, hereby demands judgment in its favor and against Defendant Audatex North America, Inc. as follows:

1.     For compensatory damages in the amount of at least $2,500,000 for Audatex's breach of contract, with the specific amount to be determined at trial;

2.     An award of Plaintiffs' costs and reasonable attorney's fees; and

3. For such other and further relief as the Court deems just, equitable, and proper.

**Demand for Jury Trial**

ACIC hereby demands a trial by jury on all issues so triable.

Dated: July 13, 2022

> **Larson • King LLP**
>
> s/ *Daniel C. Adams*
> Daniel C. Adams (#DA6492)
> Shawn M. Raiter (*pro hac vice* to be filed)
> Samuel H.J. Schultz (*pro hac vice* to be filed)
> 2800 Wells Fargo Place
> 30 East 7th Street
> St. Paul, Minnesota 55101
> Telephone: (651) 312-6500
> dadams@larsonking.com
> sraiter@larsonking.com
> sschultz@larsonking.com
>
> - and –
>
> Philip W. Allogramento III (#PA 7796)
> **CONNELL FOLEY LLP**
> 56 Livingston Avenue
> Roseland, NJ  07068
> Telephone: (973) 535-0500
> pallogramento@connellfoley.com
>
> ***Attorneys for Plaintiff***