UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERIPRISE CAPTIVE INSURANCE
COMPANY, as subrogee of IDS PROPERTY
CASUALTY INSURANCE COMPANY,

Plaintiff,

-against-

AUDATEX NORTH AMERICA, INC.,

Defendant.

---

Case No. 1: 22-cv-05964 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Ameriprise Captive Insurance Company ("Ameriprise" or "Plaintiff"), as subrogee of IDS Property Casualty Insurance Company ("IDS"), commenced this action against Defendant Audatex North America, Inc. ("Audatex" or "Defendant"), for breach of contract. *See generally* ECF No. 1. Plaintiff alleges that Defendant breached its contractual obligations to indemnify the cost of defending and settling another lawsuit, *Zuern v. IDS Prop. Cas. Ins. Co.*, No. 3:19-cv-06235 (MLP), (W.D. Wash.) ("*Zuern*"), and carry certain insurance. Pending before the Court is Defendant's motion to dismiss with prejudice under Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 22.[1] For the following reasons, Defendant's motion to dismiss is GRANTED.

---

[1] For purposes of this Opinion and Order, relevant filings include: Plaintiff's Complaint, ECF No. 1 ("Compl." or "Complaint"); Defendant's Motion to Dismiss, ECF No. 22 ("MTD"); Defendant's Memorandum of Law in Support of Defendant's MTD, ECF No. 23 ("Br."); Plaintiff's Opposition to Defendant's MTD, ECF No. 32 ("Opp."); Defendant's Reply in Support of Defendant's MTD, ECF No. 34 ("Reply"); the Application Service Provider Agreement, ECF No. 24-1 ("Agreement"); and the *Zuern* complaint, ECF No. 1-1 ("*Zuern* Compl.").

## BACKGROUND[2]

### I.  The Parties

Plaintiff Ameriprise is a Vermont insurance company with its principal place of business in Minnesota.  Compl. ¶ 6.  Ameriprise provided insurance coverage to its affiliate, IDS, for purposes of the *Zuern* litigation.  *Id*. ¶¶ 1, 6, 35, 47.  IDS is a Wisconsin insurance company with its principal place of business in Wisconsin.  *Id*. ¶ 7.  Because the parties agree that the corporate distinction between Ameriprise and IDS is "immaterial for purposes of this motion to dismiss," the Court hereafter refers to the Ameriprise and IDS entities collectively as "Ameriprise" or "Plaintiff."  Br. at 3 n.4 (referring to entities collectively as "Ameriprise" or "Plaintiff"); *see* Compl. ¶ 47 (alleging that Ameriprise "is subrogated to the rights of" IDS).

Defendant Audatex is a Delaware corporation with its principal place of business in California.  Compl. ¶ 8.  Defendant sells services and software to insurance companies, including to Plaintiff.  *Id*. ¶ 13.

### II.  The Agreement

In October 2011, the parties entered into the Application Service Provider Agreement (the "Agreement"), and a Statement of Work for purposes of implementing the Agreement.  *Id*. ¶¶ 15-16; *see* Agreement.[3]  Under the Agreement, Defendant agreed to provide software and services to Plaintiff, including its vehicle valuation software "Autosource."  *Id.* ¶¶ 16-19.

---

[2] Unless otherwise noted, the facts stated herein are taken from the Complaint, which the Court accepts as true, and material referenced in the Complaint.  *See In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 176 (2d Cir. 2013).

[3] The Court may consider the Agreement on the instant motion because it is incorporated by reference into the Complaint.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (stating that a court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit").

Autosource is a software tool used to determine the "total cash value" of vehicles and apply a "typical negotiation adjustment" ("TNA") to that value.  *Id*. ¶ 20.  A TNA is the reduction a buyer can normally obtain at a dealership by negotiating down the advertised price of a vehicle. *Id*.  The TNA applied by Autosource typically reduces the value of vehicles by approximately 6 to 7 percent.  *Id*. ¶¶ 19-21.  Plaintiff used the Autosource software in its auto insurance business to determine the value of a vehicle when an insured would submit a claim for the total loss of their vehicle.  *Id*. ¶ 19.

The Agreement contains several provisions that are at issue on this motion.  Sections 5.11 and 25.26.1 impose certain responsibilities on Plaintiff.  Section 5.11 states that Plaintiff "assumes exclusive responsibility for . . . the consequences of any instructions Ameriprise gives" to Defendant.  Section 25.26.1 further states that Plaintiff "is responsible for: (i) compliance with all laws and governmental regulations affecting Ameriprise's business, and (ii) any use Amerpirse [sic] may make of the Services to assist Ameriprise in complying with such laws and governmental regulations."

With respect to Defendant's responsibilities, Section 25.26.1 provides that Defendant "ha[s] no responsibility relating thereto (including, without limitation advising Ameriprise of Ameriprise's responsibility in complying with any laws or governmental regulations affecting Ameriprise's business)" and that "[i]n no event shall Ameriprise rely solely on Ameriprise's use of the Services in complying with any laws and governmental regulations."  Section 18.1.7 states that "[Defendant] (and the Services, including the System) shall comply with all applicable federal, state, local and foreign rules, laws and regulations, in the performance of its obligations hereunder, including the Foreign Corrupt Practices Act, the Gramm-Leach-Bliley Act, the Sarbanes Oxley Act, Regulation SP, Payment Card Industry – Data Security Standards, and

Massachusetts 201 C.M.R. sections 17.00-17.04, and (ii) it shall obtain all applicable permits and licenses in connection with its obligations under this Agreement."

Section 20 of the Agreement contains an indemnification provision, which reads, in relevant part:

> 20.1 Vendor Indemnity. Notwithstanding any other provision herein, [Audatex] agrees to defend, at its own expense, any claim, suit or action or proceeding brought against Ameriprise or its Affiliates, and each of their respective directors, officers, employees and agents (collectively, "Indemnitees") and shall indemnify and hold Indemnitees harmless from and against any and all claims, judgments, awards, demands, liabilities, losses, costs, damages or expenses (including reasonable attorneys' fees and costs of settlement) (collectively, "claims"), resulting from or arising out of:
>
> 20.1.1 the System, Services, Content (specifically excluding Ameriprise Content), or any work product provided by [Audatex] hereunder, or the use thereof, and/or
>
> 20.1.2 any third party claims arising out of [Audatex's] representations, warranties, covenants, or other obligations under Sections 10.3 ("Information and Physical Security"), 12.1 ("Legal Compliance"), 12.3 ("Policy Compliance"), and/or Articles 15 ("Encryption Export") or 18 ("Representations, Warranties and Covenants").

Agreement § 20.1 (capitals and emphasis omitted); *see* Compl. ¶¶ 38-39.

The Agreement further requires Defendant "to carry certain insurance as described in Section 24 and Schedule 8.0." Comp. ¶ 44. Section 24 contains five different contractual provisions. *See* Agreement §§ 24.1-24.5. Schedule 8.0 enumerates nine different types of insurance, including coverage for employee fidelity bonds, professional liability/errors and omissions, workers compensation, employer's liability, commercial general liability insurance, medical payments, commercial auto liability, umbrella/excess liability, and electronic data processing/privacy and network security insurance.

The Agreement also contains a choice-of-law clause selecting New York law.  *See id*.
§ 25.6.

### III. The *Zuern* Litigation

In November 2019, auto-insurance customers brought a class-action lawsuit against
Ameriprise.  Compl. ¶ 22; *see Zuern* Compl.[4]  The *Zuern* litigation alleged that Ameriprise sold
insurance contracts that were legally required to, but in fact did not, cover the total loss of
insured vehicles based on "the actual cash value of the vehicle or the amount necessary to repair
or replace the property."  Compl. ¶¶ 23, 24.  In short, the lawsuit alleged that Ameriprise used
reports from AudaExplore, now Audatex, to determine the value of vehicles for such coverage;
that "Ameriprise instruct[ed] AudaExplore as to what specific data to include in the report as the
basis for the valuation," including whether to include a TNA; and that Ameriprise's use of a
TNA in this valuation process violated its customer's insurance contracts and Washington law.
*Zuern* Compl. ¶¶ 19, 25-26.

In December 2020, Ameriprise settled the *Zuern* litigation.  Compl. ¶ 28.  The settlement
required the creation of a $1,750,000 settlement fund, which would be distributed to class
members.  *Id*.  The settlement class comprised:

> All persons insured by a contract of automobile insurance issued
> by IDS to a Washington resident, and who, from October 25, 2013
> through the date of the order granting preliminary approval,
> received compensation for the total loss of their vehicles under
> their First Party Coverages (Comprehensive, Collision, and UIM)
> and received a total loss valuation from IDS based upon an
> Audatex valuation.

---

[4] The Court may consider the *Zuern* complaint on the instant motion because it is attached to and
otherwise incorporated by reference into Plaintiff's Complaint.  *See supra* n.3.

*Id.* ¶ 31.  The settlement released all claims "relating to or arising out of the valuation, adjudication, or claims handling of any automobile total loss claim adjudicated using any valuation report prepared or provided by Audatex," and named Audatex as a "Released Party." *Id.* ¶¶ 32, 33.  The court approved the settlement and entered judgment in May 2021.  *Id.* ¶ 34. Ameriprise ultimately paid a total of approximately $2,500,000 to defend and resolve the *Zuern* litigation.  Compl. ¶ 35.

The Complaint alleges that the allegations in the *Zuern* complaint were not unique, and customers have sued numerous other insurance companies and Audatex in part based on Audatex's vehicle valuation system and services.  *Id*. ¶¶ 36-37 (collecting cases).

## IV. The Alleged Breaches

After receiving notice of the *Zuern* litigation, Plaintiff demanded that Defendant defend it against the lawsuit and indemnify Plaintiff for any loss.  *Id.* ¶ 41.  Defendant declined to do so. *Id*.  After the court entered final judgment in the *Zuern* litigation, Plaintiff again demanded that Defendant indemnify it for all costs paid to resolve the lawsuit.  *Id.* ¶ 43.  Defendant again declined to indemnify Plaintiff.  *Id*.  Plaintiff further asked Defendant to "provide contact information for the insurance carrier that issued the required coverage" under Section 24 and Schedule 8.0 of the Agreement.  *Id*. ¶¶ 44-45.  Defendant did not provide proof of such coverage in response to Plaintiff's request.  *Id*. ¶ 46.

## V. Procedural History

Plaintiff filed the Complaint on July 13, 2022.  *See id*.  The Complaint asserts a single count for breach of contract, alleging that Defendant breached the Agreement by refusing to defend and indemnify against the *Zuern* litigation and failing to obtain certain insurance coverage.  *Id*. ¶¶ 48-57.  Defendant subsequently filed a motion to dismiss, *see* MTD, Plaintiff

opposed the motion, *see* Opp., and Defendant filed a reply, *see* Reply.  Defendant's motion is

therefore fully briefed and presently before the Court.[5]

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Francis v.*

*Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678, 680 (2009)).  The Court draws all reasonable inferences in the plaintiff's favor, and accepts

as true all non-conclusory allegations of fact.  *Id.*  However, a complaint must allege "more than

a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely

consistent with' a defendant's liability."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007).  Determining whether a complaint states a claim is "a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *Iqbal*, 556 U.S. at 679.

On a motion to dismiss, a court may "consider any written instrument attached to the

complaint, statements or documents incorporated into the complaint by reference, . . . and

documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."

*ATSI Commc'ns, Inc.*, 493 F.3d at 98; *see Fawn Second Ave. LLC v. First Am. Title Ins. Co.*, 610

F. Supp. 3d 621, 628 (S.D.N.Y. 2022).  "Where a document is referenced in a complaint, 'the

documents control and this Court need not accept as true the allegations in the . . . complaint.'"

---

[5] Because the parties' briefing is comprehensive and oral argument would not assist the Court on
the present record, the Court declines to hold oral argument.  *See AD/SAT, Div. of Skylight, Inc.*
*v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999) (stating that "a district court's decision whether
to permit oral argument rests within its discretion" (citation omitted)).

*Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (quoting *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000)).

To state a claim for breach of contract under New York law, a party must allege: (i) the existence of a contract; (ii) performance by the plaintiff; (iii) breach by the defendant; and (iv) damages attributable to the breach. *See Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 122 (S.D.N.Y. 2014) (citing *Beautiful Jewellers Priv. Ltd. v. Tiffany & Co.*, 438 F. App'x 20, 21-22 (2d Cir. 2011)).

## DISCUSSION

Plaintiff asserts two theories in support of its breach of contract claim: that Defendant breached the Agreement by (i) refusing to defend and indemnify against the *Zuern* litigation, and (ii) failing to obtain certain insurance coverage. Defendant contends that both theories fail. Defendant argues that it did not breach the Agreement by refusing to defend and indemnify against the *Zuern* litigation because the Agreement imposes exclusive responsibility for that lawsuit on Plaintiff, and Plaintiff's second theory fails because the Complaint does not identify any specific provision that was breached or allege damages. The Court concludes that the Complaint fails under both theories.

### I.  The Indemnification Claim

The present motion does not dispute several elements of Plaintiff's claim for breach of the Agreement's indemnification provision. It is not disputed that the Agreement is a contract between the parties, and Plaintiff performed under the Agreement. Instead, the parties contest the third element: breach. Defendant argues that the Agreement as a whole imposes exclusive responsibility for the *Zuern* litigation on Plaintiff, and the indemnification provision does not shift that responsibility onto Defendant. *See* Br. at 11-20. Plaintiff argues that Defendants are in

breach because the indemnification provision takes precedence over the Agreement's other provisions and encompasses the *Zuern* litigation.  *See* Opp. at 5-21.

### A.  Legal Standard

The parties agree that an "obligation for one party to indemnify the other 'must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.'"  Opp. at 12 (quoting *Hooper Assocs., Ltd v. AGS Comput., Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989)); *see* Br. at 11 (same).  To survive a motion to dismiss under this strict standard, an agreement must "demonstrate an 'unmistakable intent' to indemnify the negligent party" for the expenses at issue.  *Exxon Mobil Corp. v. Tredegar Corp.*, 891 F. Supp. 2d 559, 562 (S.D.N.Y. 2012) (quoting *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990)).  As such, an "indemnity clause must reflect the unmistakable intent of the parties as to the scope of its coverage."  *Ga.-Pacific Consumer Prods., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 251 (S.D.N.Y. 2008) (quoting *Schiavone Constr. Co. v. Cnty. of Nassau*, 717 F.2d 747, 751 (2d Cir. 1983)).

To determine the parties' unmistakable intent, courts consider "the purpose and language of the whole agreement," *Haynes*, 921 F.2d at 457, and interpret the agreement "to avoid inconsistencies and to give meaning to all of its provisions," *Ga.-Pacific Consumer Prods., LP*, 566 F. Supp. 2d at 254 (quoting *Malleolo v. Malleolo,* 287 A.D.2d 603 (2d Dep't 2001)).  Even if the parties urge differing interpretations, an agreement is unambiguous if it "is reasonably susceptible of only one meaning."  *Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*, No. 21-cv-10779, 2023 WL 372883, at *3 (S.D.N.Y. Jan. 24, 2023) (internal citation omitted).  Conversely, an agreement is ambiguous, and thereby fails to demonstrate unmistakable intent, if there is a "reasonable basis for a difference of opinion."  *Exxon Mobil Corp.*, 891 F. Supp. 2d at

562, 564 (quoting *Met. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990)).  "If

indemnification is not the unmistakable intent of the parties, the claim must be dismissed."  *Id.*

at 562 (granting motion to dismiss because it was ambiguous whether the indemnification

provision applied); *see, e.g.*, *Tonking v. Port Auth.*, 821 N.E.2d 133, 135 (2004) (affirming

motion to dismiss because "the language of the parties is not clear enough to enforce an

obligation to indemnify"); *see also Firemen's Ins. Co. v. Story*, 858 F. App'x 20, 22 (2d Cir.

2021) (concluding there was no duty to indemnify because "the language the parties used f[e]ll[]

short of expressing the unmistakable intent required by New York law").

### B.  Application

Here, the Agreement does not demonstrate an "unmistakable intent" to require Defendant

to defend and indemnify against the *Zuern* litigation for three reasons.

First, the Agreement imposes exclusive responsibilities on Plaintiff – not Defendant –

that reasonably encompass the *Zuern* litigation.  Section 5.11 places "exclusive responsibility"

on Plaintiff for "the consequences of any instructions Ameriprise gives to [Audatex]" under the

Agreement.  Section 25.26.1 further provides that (i) Plaintiff "is responsible for … compliance

with all laws and governmental regulations affecting Ameriprise's business"; and (ii) Plaintiff "is

responsible for . . . any use [Ameriprise] may make of the Services to assist Ameriprise in

complying with such laws and governmental regulations."

The *Zuern* litigation falls within Plaintiff's responsibilities under Sections 5.11 and

25.26.1.  In the *Zuern* litigation, the claimants alleged that Plaintiff "instruct[ed] [Audatex] as to

what specific data to include . . . as the basis for the valuation[s], including whether to include a

'typical negotiation' adjustment."  *Zuern* Compl. ¶ 19.  The claimants alleged that Plaintiff has a

"common policy and general business practice of using . . . adjustments to improperly reduce

insureds' total loss valuations and claims payments" and this business practice violated "Washington law and [Plaintiff's] contractual obligations" under the law.  *Id.* ¶ 1; *see id.* ¶¶ 2, 17, 19, 25, 56.  They further alleged that Plaintiff "violated, and continues to violate, Washington law." *Id.* ¶ 56.  These allegations parallel the Agreement's allocation of responsibilities to Plaintiff for the consequences of any instruction Plaintiff gives to Defendant, Plaintiff's compliance with all laws affecting its business, and Plaintiff's use of Defendant's software to assist with its compliance.  *See* Agreement §§ 5.11, 25.26.1.  Accordingly, the Agreement expressly imposes on Plaintiff responsibilities that reasonably encompass the *Zuern* litigation.

Second, the Agreement expressly *excludes* Defendant from responsibilities that encompass the *Zuern* litigation.  As stated previously, Section 25.26.1 not only states that (i) Plaintiff "is responsible for . . .  compliance with all laws and governmental regulations affecting Ameriprise's business" and (ii) Plaintiff "is responsible for . . . any use [Ameriprise] may make of the Services to assist Ameriprise in complying with such laws and governmental regulations," but that Defendant has "no responsibility relating thereto."  Therefore, the Agreement provides that Defendant has no responsibility relating to Plaintiff's compliance with laws affecting Plaintiff's business or Plaintiff's use of Defendant's services to comply with those laws.  It makes clear that Defendant has no responsibility for "advising Ameriprise of Ameriprise's responsibility in complying with any laws or governmental regulations affecting Ameriprise's business." *Id.* § 25.26.1.  It further provides that, "[i]n no event shall Ameriprise rely solely on Ameriprise's use of the Services in complying with any laws and governmental regulations." *Id.* This express language indicates an intent to exclude Defendant from responsibility for Plaintiff's violations of laws affecting its business, like those alleged in the *Zuern* litigation.

Section 18.1.7 allocates compliance obligations to Defendant consistent with Section 25.26.1.  It requires Defendant "(and the Services, including the System) [to] comply with all applicable federal, state, local and foreign rules, laws and regulations, in the performance of its obligations hereunder, including the Foreign Corrupt Practices Act, the Gramm-Leach-Bliley Act, the Sarbanes Oxley Act, Regulation SP, Payment Card Industry - Data Security Standards, and Massachusetts 20 I C.M.R. sections 17.00-17.04 . . . ."  In other words, Defendant's responsibilities pertain to "applicable" laws and "the performance of *its* obligations" under the Agreement.  Although the enumerated laws are not exhaustive, no violations by Defendant of any of the specified laws were implicated in the *Zuern* litigation.  Moreover, Defendant's obligations overall are circumscribed by Sections 5.11 and 26.25.1, which, as the Court just discussed, exclude Defendant from responsibility for the consequences of Plaintiff's instructions, Plaintiff's compliance with laws affecting its business, and Plaintiff's use of the valuation software as part of its compliance.  In sum, the Agreement carefully allocates responsibilities between the parties, and indicates the parties' intent to impose exclusive responsibility on Plaintiff for the type of claims at issue in the *Zuern* litigation and exclude Defendant from such responsibility.

Third, the indemnification provision does not indicate an unmistakable intent to expand the scope of Defendant's responsibilities to encompass the *Zuern* litigation.  Section 20.1 provides that Defendant "shall indemnify" Plaintiff for claims "resulting from or arising out of . . . the System, Services, Content (specifically excluding Ameriprise Content), or any work product provided by [Audatex] hereunder, or the use thereof, and/or . . . any third party claims arising out of [Audatex's] representations, warranties, covenants, or other obligations under Sections 10.3 ("Information and Physical Security"), 12.1 ("Legal Compliance"), 12.3 ("Policy

Compliance"), and/or Articles 15 ("Encryption Export") or 18 ("Representations, Warranties and Covenants")."  Compl. ¶¶ 38-39.  In isolation, some of the language in Section 20.1 appears to sweep broadly.  However, "context is important to understanding the significance of this provision."  *Stephens Inc. v. Flexiti Fin. Inc.*, No. 18-cv-08185 (JPO), 2019 WL 2725627, at *3 (S.D.N.Y. July 1, 2019) (finding "subsequent provisions d[id] not unmistakably indicate the parties' intent to expand the scope of indemnification"); *Ga.-Pacific Consumer Prods., LP*, 566 F. Supp. 2d at 254 (recognizing that contractual language "when isolated from the rest of the agreement . . . suggest[ed] a very broad assumption of liabilities" but not when considered next to the agreement's other provisions).

The Court has considered the parties' competing interpretations of Section 20.1. Defendant argues that Section 20.1 does not apply because the *Zuern* litigation resulted or arose out of Plaintiff's conduct and Plaintiff's failure to comply with laws affecting its business, responsibility for which the Agreement exclusively imposes on Plaintiff.  Br. at 16-20.  Plaintiff argues that the provision applies because the *Zuern* litigation "resulted and arose" from its use of Defendant's services and Defendant's failure to comply with laws applicable to its obligations under the Agreement.  Opp. at 15-19.  Considering the strict standard applicable to indemnification, the Court finds Defendant's interpretation of Section 20.1 more compelling and consistent with the allocation of responsibilities elsewhere in the Agreement.  *See, e.g.*, *Ga.-Pacific Consumer Prods., LP*, 566 F. Supp. 2d at 254 (finding no duty to indemnify once the agreement was read "to avoid inconsistencies and to give meaning to all of its provisions" (quoting *Malleolo,* 287 A.D.2d 603)).

Even assuming it was a close call and there was some ambiguity as to whose interpretation is more compelling, Plaintiff would not be entitled to indemnification because

there is at least a "reasonable basis for a difference of opinion" as to the scope of the duty to indemnify. *Exxon Mobil Corp.*, 891 F. Supp. 2d at 562, 564 (quoting *Met. Life Ins. Co.*, 906 F.2d at 889); *see, e.g.*, *Krys v. Aaron (In re Refco Inc. Sec. Litig.)*, 890 F. Supp. 332, 343 (S.D.N.Y. 2012) ("[I]f the indemnity provision in this case is subject to a reasonable interpretation one way or another, the agreement must be construed not to indemnify DPM's legal expenses in defending against SMFF claims.").  In the absence of the parties' "unmistakable intent," Plaintiff's claim for breach of the indemnification provision must be dismissed.  *See, e.g., Tonking*, 821 N.E.2d at 135 (affirming dismissal because "the language of the parties is not clear enough to enforce an obligation to indemnify"); *Firemen's Ins. Co.*, 858 F. App'x at 22 ("Even assuming there is some ambiguity as to whether Story is entitled to indemnification, the language the parties used falls short of expressing the unmistakable intent required by New York law."); *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, No. 05-6885-cv (L), 2006 WL 3370698, at *1 (2d Cir. Nov. 20, 2006) ("Huff's attempt to cast these provisions in a light that could justify their application here is unavailing because the test is whether the intent to indemnify is 'unmistakably clear from the language of the promise,' not whether the agreement could be read to provide for indemnification." (internal citation omitted)); *New York v. Panex Indus.*, 41 F. App'x 516, 517 (2d Cir. 2002) ("In any event, appellants as indemnitees had the burden to show that there was a clear and unmistakable intent to indemnify.  Quibbles, grammatical imperfections, convoluted statements, and near ambiguities are not enough." (internal quotation marks and citation omitted)).

Plaintiff raises several arguments in opposition.  Plaintiff urges the Court to construe any ambiguity in its favor and deny the motion if the parties' intent is ambiguous.  *See* Opp. 5.  As a basic principle, it is "generally true that a contract that is ambiguous raises a question of fact as

to its meaning." *Krys*, 890 F. Supp. 2d at 350.  However, under the strict standard applied to indemnification claims, the "requirement for unmistakable clarity trumps the general rule that ambiguity in a contract raises a question of fact."  *Id.* (rejecting the same argument raised by Plaintiff and holding that an indemnification claim fails on a motion to dismiss absent "unmistakable clarity").  Courts routinely dismiss indemnification claims *because* the parties' intent to indemnify is ambiguous.  *See, e.g.*, *Exxon Mobil Corp.*, 891 F. Supp. 2d at 566 (granting motion to dismiss because "ambiguity is fatal to Exxon's claim for indemnification, which is evaluated under an 'unmistakable intent' standard"); *see also Homeward Residential, Inc.*, 298 F.R.D. at 134 (granting motion to dismiss because the agreement did not express "unmistakably clear" intent to indemnify).  In any event, even construed in Plaintiff's favor, the Agreement and pleadings are still insufficient for the Court to reasonably infer an "unmistakable intent" to indemnify under the facts alleged.

*Suazo v. Maple Ridge Assocs., L.L.C.*, 85 A.D.3d 459 (App. Div. 1st Dept. 2011) is instructive.  There, the plaintiff sought indemnification under the parties' agreement and the defendant moved to dismiss.  *Id.* at 460.  The trial court denied the motion because it found the agreement ambiguous.  *Id.* at 459-61.  On appeal, the Appellate Division reversed because "neither the language nor the purpose" of the whole agreement "evince[d] an unmistakable intent to indemnify" the type of claim at issue, so the indemnification claim "should have been dismissed."  *Id.* at 460-61.  The Appellate Division emphasized that, "even assuming that the [agreement] [wa]s ambiguous and the intent of the parties cannot be ascertained from the four corners of the document, . . . such determination, in and of itself, compels dismissal of the . . . complaint."  *Id.* at 461.  Here too, the Agreement as a whole does not demonstrate an unmistakable intent to require indemnification of the *Zuern* litigation.

Plaintiff urges the Court to consider the indemnification provision only and not the Agreement's other provisions.  *See* Opp. at 5-7.  But Plaintiff cites no authority that supports this proposition, and it is contrary to law.  New York's highest court has held that a duty to indemnify "should not be found unless it can be clearly implied from the language and purpose of the *entire agreement* and the surrounding facts and circumstances," as the case law Plaintiff cites makes clear.  *Hooper*, 548 N.E.2d at 905 (emphasis added); *see* Opp. at 12 (relying on *Hooper*).  The Second Circuit, too, has held that courts may consider "the purpose and language of the whole agreement" when assessing a duty to indemnify, *see Haynes*, 921 F.2d at 457, and courts frequently do so on a motion to dismiss, *see, e.g.*, *Suazo*, 85 A.D.3d at 460 (affirming dismissal because "the entire agreement" did not evince an unmistakable intent to indemnify).

Plaintiff further argues that, assuming the Court considers the entire Agreement, it should give the indemnification provision "precedence over any conflicting language in the Agreement" because it contains "trumping language," i.e., it applies "[n]otwithstanding any other provision herein."  Opp. at 8-11.  It is generally true that "clauses similar to the phrase '[n]otwithstanding any other provision' trump *conflicting* contract terms."  *MeehanCombs Glob. Credit Opportunities Master Fund, LP v. Caesars Ent. Corp.*, 162 F. Supp. 3d 200, 211 (S.D.N.Y. 2015) (quoting *Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 158 (2015)).  However, such clauses do not take precedence where the terms "are not inconsistent with one another and each clause therefore may be given force."  *Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 142-44 (S.D.N.Y. 2004) (rejecting the same argument raised by Plaintiff because "notwithstanding" clause concerning indemnification was "not inconsistent with the allocation of responsibility" elsewhere in the agreement); *see MeehanCombs Glob. Credit Opportunities Master Fund, LP*, 162 F. Supp. 3d at 211 (rejecting Plaintiff's argument and giving effect to

entire agreement because a "notwithstanding clause" only trumps "*conflicting* contract terms").
Here, as in *Pfizer* and *MeehanCombs*, the Court has not found that other sections of the
Agreement, including Sections 5.11 and 25.26.1, conflict with the indemnification provision.
Rather, it has determined that once the Agreement is viewed as a consistent whole, the
Agreement does not demonstrate an unmistakable intent to require Defendant to indemnify the
costs of the *Zuern* litigation.

Courts have repeatedly dismissed indemnification claims in similar circumstances where,
like here, the agreement does not demonstrate the parties' unmistakable intent. *Exxon Mobil
Corp. v. Tredegar Corp.*, a case Defendant relies on at length and Plaintiff fails to address, is
instructive. 891 F. Supp. 2d at 562. In *Exxon*, the defendant moved to dismiss Exxon's claim
for breach of an indemnification agreement. *Id*. The parties' agreement there, like the
Agreement here, contained an express indemnification provision. *Id*. at 563-64. The "critical
question" there, similar to here, was whether liability for a settlement "ar[ose] out of or relate[d]
to" an occurrence under the agreement. *Id*. at 564. To answer this question, the court considered
how the agreement as a whole allocated responsibilities between the parties. *Id*. at 563-64. It
found that it was "ambiguous whether Exxon's settlement" was a liability for which Exxon or
the defendant was responsible. *Id*. at 565. Therefore, the court held that "[t]his ambiguity is
fatal to Exxon's claim for indemnification, which is evaluated under an 'unmistakable intent'
standard," and it dismissed the complaint. *Id*. at 566. So too here, the Agreement fails to evince
an unmistakable intent to hold Defendant liability for the *Zuern* litigation, which is fatal to
Plaintiff's claim for breach of the duty to indemnify.

Similarly, in *Continental Building Products Operating Co., LLC v. Lafarge North
America, Inc.*, the parties' agreement contained an express indemnification provision and other

provisions allocating liabilities between the parties.  No. 17-cv-02599 (AJN), 2018 WL 1583309, at *1-3 (S.D.N.Y. Mar. 27, 2018).  On a motion to dismiss, the court found the agreement did not clearly impose a duty on the defendant to indemnify against the underlying litigation.  *Id*. *4-5.  "At the very least," the court concluded, "the language of the indemnification provision does not allow the Court to infer that the [agreement] evinces an 'unmistakable intent' to indemnify [the plaintiff] under the circumstances at issue [t]here."  *Id*. at *5.  The court therefore dismissed the indemnification claim.  *Id*.

Courts in other cases have dismissed indemnification claims for similar reasons.  *See, e.g.*, *Homeward Residential, Inc.*, 298 F.R.D. at 134 (granting motion to dismiss because the agreement was "not 'unmistakably clear' that the indemnification provision covers [the] claims" at issue); *Access Bus. Grp. Int'l, LLC*, 2023 WL 372883, at *4 (granting motion to dismiss because the "parties' indemnification agreement . . . does not have the express, unequivocal language required to meet the strict standard of *Hooper*"); *MSR Tr. v. Nationstar Mortg. LLC*, No. 21-cv-03089 (GBD) (RWL), 2022 WL 17689839, at *3 (S.D.N.Y. Dec. 15, 2022) (granting motion to dismiss claim for breach of an indemnification provision and noting that "[c]ourts have dismissed or entered summary judgment on claims for indemnification where the claimant fails to sufficiently allege or establish facts showing that the right to indemnification has been triggered"); *Fleetwood Servs., LLC v. Ram Cap. Funding LLC*, No. 20-cv-05120 (LJL), 2021 WL 1987320, at *5 (S.D.N.Y. May 18, 2021) (granting motion to dismiss breach of contract claim because the parties' agreement "as a whole and its context" made clear that the duty to indemnify did not cover the underlying claims at issue); *Eckhoff v. Wal-Mart Assocs., Inc.*, No. 13-cv-02395 (CS), 2013 WL 6847117, at *3-4 (S.D.N.Y. Dec. 30, 2013) (granting motion to dismiss because agreement did "not contain unequivocal language to the effect that NFI w[ould]

indemnify WMT for its own negligence" and "at the very least, [the applicability of indemnification] is far from clear").

Accordingly, accepting the well-pleaded allegations as true, considering the documents Plaintiff references in the Complaint, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that the Agreement does not demonstrate the parties' "unmistakable intent" to impose a duty on Defendant to defend and indemnify against the *Zuern* litigation. Therefore, Plaintiff is not entitled to indemnification, and its claim for breach of the indemnification provision is dismissed. *See, e.g.*, *Tonking*, 821 N.E.2d at 136; *Exxon Mobil Corp.*, 891 F. Supp. 2d at 565.

## II. The Insurance Claim

The Complaint alleges that Defendant also breached the Agreement by failing to obtain "certain" insurance required by the Agreement. Compl. ¶ 44. Defendant argues that this claim fails because the Complaint neither (i) identifies any specific provision Defendant allegedly breached, nor (ii) alleges any damage flowing from the breach. Br. at 20-22. Plaintiff concedes that it has not identified the specific provision breached, but argues that the Complaint states a sufficiently "simple and straightforward claim" for breach of contract. Opp. at 22-24.

As discussed above, to state a claim for breach of contract, a plaintiff must allege, among other elements, a breach of the contract and damages attributable to the breach. *See Homeward Residential, Inc.*, 298 F.R.D. at 122. An "essential requirement" to stating the claim "is alleging a 'specific provision' that was breached." *Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014) (quoting *Orange Cnty. Choppers, Inc. v. Olaes Enters.*, Inc., 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007)); *see Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) ("[A] plaintiff must identify what provisions of the contract were

breached as a result of the acts at issue.").  Additionally, "factual allegations showing damages

are essential."  *Mariah Re Ltd.*, 52 F. Supp. 3d at 611.  "In the absence of any allegations of fact

showing damage, mere allegations of breach of contract are not sufficient to sustain a

complaint."  *Id.* (quoting *Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*, 651 N.Y.S.2d

490, 492 (1st Dept. 1996)); *see Pu v. Russell Publ'g Grp., Ltd.*, 683 F. App'x 96, 97 (2d Cir.

2017) (same).

       The Complaint only contains a handful of allegations in support of this claim.  It alleges

that "[t]he Agreement required Audatex to carry certain insurance as described in Section 24 and

Schedule 8.0," and that "[i]n connection with the *Zuern* lawsuit, Audatex was asked to provide

the contact information for the insurance carrier that issued the required coverage."  Compl.

¶¶ 44, 45.  The Complaint alleges that "Audatex did not respond to those requests and has not

provided IDS or ACIC's representatives with proof that it secured the insurance coverage it was

obligated to obtain under the Agreement."  *Id.* ¶ 46.  Upon "information and belief," it alleges

that "Audatex failed to obtain the insurance coverage required by the Agreement and, as a result,

breached the Agreement."  *Id.* ¶ 54.  In allegations also applicable to the claim for breach of the

indemnification provision, the Complaint alleges that Plaintiff "was damaged by Audatex's

breach of the parties' Agreement" and as a result, Plaintiff "is entitled to damages in an amount

of at least $2,500,000."  *Id.* ¶¶ 55, 57.

       These allegations are insufficient to plead either breach or damages.  First, the Complaint

fails to identify a "specific provision" of the Agreement that was breached.  *Mariah Re Ltd.*, 52

F. Supp. 3d at 611.  Although the Complaint refers generally to "Section 24 and Schedule 8.0,"

Section 24 itself contains five different subparts and those subparts incorporate other sections of

the Agreement, and Schedule 8.0 contains nine provisions covering a range of insurance types,

20

including coverage for employee fidelity bond, professional liability/errors and omissions, workers' compensation, employer's liability, commercial general liability insurance, medical payments, commercial auto liability, umbrella/excess liability, and electronic data processing/privacy and network security insurance.  Compl. ¶ 44; *see* Agreement § 24, Schedule 8.0.  After Defendant raised this deficiency in its opening brief, Plaintiff still did not identify any specific provision in its opposition.  *See* Opp. at 21-24.  Accordingly, dismissal of this claim is warranted because the Complaint does not allege the "'specific provision' that was breached." *Mariah Re Ltd.*, 52 F. Supp. 3d at 611; *see, e.g.*, *Wolff*, 171 F. Supp. 2d at 358 (dismissing breach of contract claim because "the complaint fails to provide [defendant] notice of the contractual provision allegedly breached").

Second, dismissal of this claim is warranted on the additional ground that Plaintiff does not plead damages.  The Complaint merely alleges that Defendant's breach of the Agreement damaged Plaintiff "in an amount of at least $2,500,000."  Compl. ¶¶ 55, 57.  Plaintiff relies on the same conclusory allegation for the indemnification claim, and the Court has already found that Plaintiff is not entitled to indemnification of those damages.  *See supra* Discussion § II. Additionally, the Complaint does not allege facts to show that Defendant's failure to obtain insurance resulted in Plaintiff's expenditure of money on the *Zuern* litigation or any other damages.

Accordingly, Plaintiff's claim premised on Defendant's failure to obtain insurance is dismissed on the ground that the Complaint does not allege facts "sufficient to demonstrate damages flowing from the breach alleged" (in addition to failing to identify any provision that was breached).  *Mariah Re Ltd.*, 52 F. Supp. 3d at 614 (dismissing claim because the complaint did "not allege facts to show" that the breach alleged "resulted in damages"); *see, e.g.*, *Khodeir*

*v. Sayyed*, 323 F.R.D. 193, 202 (S.D.N.Y. 2017) (dismissing claim because the complaint "does not plausibly show any damage at all that resulted from the alleged violation of the provision"); *Pu*, 683 F. App'x at 97 (affirming dismissal of claim because the plaintiff failed "to allege facts showing that the complained-of-activity caused him damages").

### III. Dismissal with Prejudice

In two sentences at the end of its opposition brief, Plaintiff requests leave to amend the Complaint should the Court dismiss its claims. *See* Opp. at 24. Plaintiff fails to provide any reason, let alone a good one, to justify its request, nor does Plaintiff cite any case in support or proffer any additional facts it would allege to overcome a subsequent motion to dismiss.

Rule 15 provides that courts "should freely give leave [to amend] when justice so requires." Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Leave "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). The futility of an amendment is assessed under the standard for a Rule 12(b)(6) motion to dismiss. *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002). To seek leave to amend, "[a] plaintiff must therefore provide some indication of the substance of the contemplated amendment before a court could entertain the request." *Mariah Re Ltd.*, 52 F. Supp. 3d at 624; *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint.); *Gallop v. Cheney*, 642 F.3d 364, 369-70 (2d Cir. 2011) (holding that district court did not err by dismissing

claim with prejudice "in the absence of any indication that [plaintiff] could – or would – provide additional allegations that might lead to a different result").

Here, Plaintiff does not justify its request to replead in any way.  Plaintiff does not provide an indication of the substance of its contemplated amendment.  Nor does Plaintiff indicate how repleading would change the outcome of a motion to dismiss an amended complaint.  Based on the language of the Agreement at issue and the nature of the claims, it is also difficult to discern how Plaintiff could cure its claims through repleading.  Accordingly, Plaintiff's request for leave to amend is denied, and the Complaint is dismissed with prejudice. *See, e.g.*, *Mariah Re Ltd.*, 52 F. Supp. 3d at 624 (dismissing complaint with prejudice because the plaintiff failed to "explain what its desired amendment" would say and it was "difficult to fathom how any amendment could be fashioned to salvage" the contract claims); *Fernandez v. Kinray, Inc.*, No. 13-cv-04938 (ARR) (SMG), 2014 WL 12778829, at *8 (E.D.N.Y. Feb. 5, 2014) (dismissing indemnification claim with prejudice).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Complaint is dismissed with prejudice.  The Court of Clerk is respectfully directed to close the case.

Dated: May 30, 2023
      New York, New York                SO ORDERED.

                                          *Jennifer Rochon*
                                    JENNIFER L. ROCHON
                                    United States District Judge